SEA TRADE MARITIME CORPORATION, Appellant, v HELLENIC MUTUAL WAR RISKS ASSOCIATION (BERMUDA) LIMITED et al., Respondents. GEORGE C. PETERS, Additional Appellant. (And a Third-Party Action.) [776 NYS2d 255]—

Orders, Supreme Court, New York County (Karla Moskowitz, J.), entered March 17, 2003, which, respectively, granted defendant Hellenic Mutual War Risks Association's motion and defendant The Miller Marine Insurance Group, Ltd.'s motion to stay this action pending resolution of an arbitration proceeding pending in London between plaintiff Sea Trade and defendant Hellenic, unanimously affirmed, with costs.

Defendant Hellenic is a mutual insurance company organized under the laws of Bermuda. Plaintiff Sea Trade is a Liberian corporation that operates the Greek-flagged merchant ship

*Athena,* which sustained damage in May 1997 at Trincomalee, Sri Lanka, resulting from the explosion of a bomb allegedly planted by Tamil terrorists. Plaintiff was insured against war risks by Hellenic under a policy obtained in 1992 and renewed annually. On its application for insurance, plaintiff agreed to conform to "the Bye-Laws and Rules of such Association" that, collectively, comprise the contract of insurance.

In a letter of August 1997, the ship's manager, Trans-Ocean Steamship Agency, admitted that "the vessel's call to Sri Lanka had unfortunately not been declared under Rule 25.1 of the Hellenic Mutual Rules" but wrote to "invite the Directors to exercise their discretion under Rule 25.3 in the Owners' favor." Hellenic's directors subsequently agreed to pay the actual repair costs "up to a maximum of US $3.4 million." Plaintiff thereafter brought this action to recover $6 million, alleging that it was fraudulently induced to enter into the contract of insurance. Defendant Hellenic invoked the broad arbitration provision contained in its rules and obtained the stay imposed by the orders appealed from.

Plaintiff's contention that it never obtained a copy of the rules comprising Hellenic's policy is unsupported by the record. The ship's manager displayed a thorough knowledge of the rules, and a log of correspondence among the offices of plaintiff's insurance broker includes the entry, "Rule Books (1994 edition) being sent." Moreover, if plaintiff, as it maintains, obtained war risk insurance and renewed the policy annually on five successive occasions without ascertaining the terms of coverage, its conduct constitutes negligence, and its ignorance is not grounds to avoid complying with the terms of the contract (*Blitman Constr. Corp. v Insurance Co. of N. Am.,* 66 NY2d 820, 822 [1985]; *Rhinebeck Bicycle Shop v Sterling Ins. Co.,* 151 AD2d 122, 125 [1989]; *see also Goldberg v Manufacturers Life Ins. Co.,* 242 AD2d 175, 180 [1998], *lv dismissed in part and denied in part* 92 NY2d 1000 [1998]).

Plaintiff is bound by the arbitration provision of the insurance contract, and a stay was appropriately imposed to prevent " 'parties to such agreements from using the courts as a vehicle to protract litigation' " (*Matter of Nationwide Gen. Ins. Co. v Investment Ins. Co. of Am.,* 37 NY2d 91, 95 [1975], quoting *Matter of Weinrott [Carp],* 32 NY2d 190, 199 [1973]). The stay was properly extended to all parties since the claims asserted by plaintiff against reinsurers, reinsurance brokers, their directors and employees are derivative claims "arising out of or in connection with" the contract of insurance and thus fall within the ambit of the arbitration provision. Concur—Tom, J.P., Saxe, Lerner, Marlow and Gonzalez, JJ.